## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Respondent/Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 3:94-CR-0075-K (02) |
| | ) | No. 3:98-CV-0488-K[1] |
| RONALD W. HUGHES, SR., | ) | |
| Movant/Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Pursuant to 28 U.S.C. § 2255, movant filed a Motion to Vacate, Set Aside, or Correct Sentence with an accompanying supporting memorandum on February 23, 1998. (*See* Mot. Vacate at 1, doc. 262; Mem. Supp. at 1, doc. 264, (all references to document numbers reflect the document number given in the underlying criminal action).) On August 7, 1998, the government filed its response to the motion to vacate. (*See* Resp. at 1, doc. 278.) On February 23, 1999, the assigned magistrate judge recommended that the Court vacate movant's conviction after holding an evidentiary hearing on January 12, 1999. (*See* Findings, Conclusions, and Recommendation (FCR) at 1, doc. 300.) Although the § 2255 motion raised several issues, the magistrate judge addressed only one – an alleged violation of *Brady v. Maryland*, 373 U.S. 83 (1963) – because that claim appeared to warrant relief under § 2255. (*Id.* at 5 n.11.) On June 30, 1999, after holding a second evidentiary hearing, the District Court adopted the

---

[1] The current docket sheets for the civil and criminal cases reflect an assignment to Judge Kendall. After Judge Kendall left the federal bench, the undersigned District Judge assumed responsibility for these cases. Consequently, the Clerk of the Court should update the docket sheets to reflect assignment to the undersigned District Judge, and change the cause numbers to end in "K" rather than "X".

recommendation of the magistrate judge, vacated the conviction, and scheduled a new trial.  (*See* Orders of June 30, 1999, docs. 323 and 324.)

On October 30, 2000, the Fifth Circuit Court of Appeals reversed the decision of the District Court, reinstated the conviction and sentence, and remanded the case to the District Court "for further proceedings not inconsistent with [the appellate] opinion." *See United States v. Hughes*, No. 95-10996, slip op. at 16 (5th Cir. Oct. 30, 2000) (copy found in District Court criminal case as doc. 344).  No further action was taken on the motion to vacate until January 20, 2005, when movant, through counsel, filed a motion seeking a ruling on the unresolved grounds for relief asserted in the motion to vacate. (*See* Mot. Requesting Ruling, doc. 350.)  Prior to the January 2005 filing, the assigned district judge and the assigned magistrate judge left their respective positions.  The undersigned District Judge has assumed responsibility for these cases and grants the January 2005 motion.

Movant raised eight claims in his motion to vacate:  (1) a failure to reveal exculpatory evidence known to Internal Revenue Service (IRS) Criminal Investigator Charles Holmes and United States Customs Agent Dan Dobbs in violation of *Brady*; (2) vindictive prosecution; (3) a failure to provide all taped conversations in violation of *Brady*; (4) a violation of a non-prosecution agreement; (5) the trial court erred in enhancing his sentence; (6) the trial court erred in denying a downward departure; (7) new evidence shows that a witness committed perjury; and (8) no evidence supports the

verdict. (Mot. Vacate at 6, 7, and 9; Mem. Supp. at 3-16.) As movant points out in his January 2005 motion, (Mot. Requesting Ruling at 2-3), the Court has not addressed the last seven claims.

Although the Court has not addressed Claim 3, it finds no current need to consider it. The claim is simply no longer at issue because movant, through counsel, withdrew the claim at the January 1999 evidentiary hearing. (*See* Tr. of Evid. H'rg at 10, doc. 295.) By withdrawing the claim, movant has eliminated any reason to consider it. Claims 2 and 4 through 8, nevertheless, remain at issue. The Court will address them without reiterating the lengthy factual and procedural background of this case – the previous recommendation entered with respect to the instant motion to vacate sets forth such matters in detail. Suffice to say, this case involves a multi-count indictment related to a conspiracy to launder drug money.

## I.  SCOPE OF RELIEF AVAILABLE UNDER 28 U.S.C. § 2255

The government argues that movant failed to raise Claims 4 and 6 on direct appeal, and that such procedural default precludes the consideration of such claims in this collateral attack because movant has shown no cause for the default and no prejudice from it. (Resp. at 5-7.) It also argues that, because movant raised Claims 5 and 8 on direct appeal, he cannot pursue such claims in this collateral challenge to his convictions under § 2255. (*Id.* at 5, 8.)

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). Defendants who collaterally attack their federal convictions, furthermore, may not raise grounds previously raised on direct appeal. *United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997). "It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986).

In addition, defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the asserted error. *Shaid*, 937 F.2d at 232. Even then, any new assertion of error is limited to "issues of constitutional or jurisdictional magnitude." *Id.* The cause and prejudice test applies even to allegations of fundamental constitutional error. *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 493 (1986)). The only exception to the application of the test is when a movant can establish a fundamental miscarriage of justice, *i.e.*, that he or she is actually innocent of the crime convicted. *Id.*

4

In this instance, movant did not raise Claims 4 and 6 on direct appeal. Furthermore, although he concedes that he raised Claims 5 and 8 on direct appeal, he argues that circumstances warrant additional consideration of such claims here.

With respect to Claim 5, movant argues that the Fifth Circuit "did not address [a] significant reason why the enhancement should not apply" and that he may raise such claim in a motion to vacate because the error results in a fundamental miscarriage of justice. (Mem. Supp. at 11, 13.)  Movant does not indicate whether he presented the unaddressed reason to the court of appeals.  To the extent he presented the reason to the Fifth Circuit, the Circuit resolved the issue against him when it upheld the enhancement. Because movant may not reassert the challenge in this collateral attack, the Court proceeds as though the Fifth Circuit did not address the proffered reason for not applying the enhancement because the issue was not directly raised by movant.

With respect to Claim 8, movant argues that "with the additional new facts that he has discovered since trial, the evidence does not support a conclusion that he is guilty." (*Id.* at 15.)  The newly discovered evidence consists of an affidavit from an inmate (Neal Quigley) who shared a prison housing facility in September 1994 with Glyn Robert Chambers, a witness who testified against movant at trial.  (*See* Aff. of Quigley, attached to Mem. Supp.)  Quigley avers that Chambers told him that Hughes did not know that the loaned money was from drug proceeds, and that Chambers "was

going to 'fry Hughes' and anyone else he could to get a time cut." (*Id.* at 4.)  Based

upon this affidavit, movant contends that Chambers provided perjured testimony.

In view of these arguments, the Court considers whether Claims 5 and 8, as well

as Claims 4 and 6, are barred from collateral review because they were either not raised

at all on direct appeal or not raised in present form on direct appeal.  For ease of

reference, the Court generically refers to claims that were omitted from direct appeal as

defaulted claims.

## A.  Miscarriage of Justice

Movants may have defaulted claims considered in a § 2255 motion without

satisfying the cause-and-prejudice test only if they establish a fundamental miscarriage

of justice.  *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (*en banc*).  To

establish such a miscarriage of justice, an inmate must show that he or she is actually

innocent of the crime convicted.  *Id.*  The suggestion that claimed errors regarding

sentencing calculations may result in a fundamental miscarriage of justice misses the

mark. "Actual innocence means 'factual innocence, and not mere legal insufficiency.'  To

prove actual innocence, the [movant] 'must demonstrate that, in light of all the evi-

dence, it is more likely than not that no reasonable juror would have convicted him.'"

*United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999).  Movant must show, "as a

factual matter, that he did not commit the crime of conviction."  *Fairman v. Anderson*,

188 F.3d 635, 644 (5th Cir. 1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir.

1995)).  Movant has not made this  showing.  Even in light of the newly discovered evidence regarding testimony from Chambers, movant has not demonstrated that it is more likely than not that no reasonable juror would have convicted him in light of the evidence that was presented against him.  The suggestion that the Court misapplied the sentencing guidelines does not demonstrate a miscarriage of justice.  Alleged misapplications of the Sentencing Guidelines do not constitute a miscarriage of justice, and are not cognizable in a § 2255 motion when they could have been raised on direct appeal.  *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).

## B.  <u>Cause and Prejudice</u>

In the absence of a miscarriage of justice, movants may have defaulted claims considered in a § 2255 motion if they show cause for the default and prejudice from it. Movant has shown no cause for omitting Claims 4 through 6 from his direct appeal.  He simply proffers no reason for omitting Claim 4.

With respect to Claim 5, movant merely argues that the Fifth Circuit failed to address a significant reason for not applying a sentencing enhancement.  He proffers no explanation for not presenting the reason to the court of appeals.  As previously mentioned, to the extent movant did present the reason to the Fifth Circuit, he may not reassert it in this collateral challenge to his sentence.

With respect to Claim 6, movant simply argues that *Koon v. United States*, 518 U.S. 81 (1996) provides a basis for the Court to reconsider its denial of his 1995 request

for a downward departure.  He proffers no adequate reason for his failure to challenge that denial on direct appeal.  Regardless of *Koon*, movant could have challenged the denial of his request for downward departure on direct appeal.  Such claim amounts to nothing more than an alleged misapplication of the sentencing guidelines that could have been raised on appeal, and is thus not cognizable in a § 2255 motion.

Movant has also shown no prejudice from the failure to present Claims 6 and 8 to the court of appeals.  With respect to Claim 6, he fails to show that application of *Koon* would result in a different ruling regarding downward departure.  With respect to Claim 8, he simply argues that he has new evidence which shows that the evidence presented against him is insufficient to support his convictions.  (Mem. Supp. at 15.) However, even assuming that the jury would have discredited testimony from Chambers based upon the new impeachment evidence from Quigley, sufficient evidence supports movant's convictions.  *See United States v. Hughes*, No. 95-10861, slip op. at 14-17, 19-21 (5th Cir. Oct. 30, 1996) (setting forth the evidence sufficient to support the convictions without solely relying on testimony from Chambers) (copy found in District Court criminal case as docs. 252 and 257).  Because sufficient evidence supports movant's convictions notwithstanding the alleged newly discovered evidence, movant has shown no prejudice to overcome the procedural bar.

## C.  Conclusion Regarding Defaulted Claims

Movant has shown no fundamental miscarriage of justice that requires consideration of his defaulted claims (Claims 4, 5, 6, and 8).  Nor has he satisfied the cause-and-prejudice test so as to overcome the procedural bar to consideration of such claims.  Consequently, the Court will not further consider Claims 4, 5, 6, and 8.

## II.  REMAINING CLAIMS

In light of the foregoing discussions, movant has asserted only two claims that require further consideration – Claims 2 and 7.  In Claim 2, movant alleges that he has newly discovered evidence of vindictive prosecution on the part of the government. (Mem. Supp. at 6-7.)  He argues that the new evidence shows that IRS Investigator Charles Holmes "had a personal problem with Ronald Hughes, Jr. dating back from high school or college and had expressed his intent to harass and annoy the Hughes family and to 'get' members of the Hughes family."  (*Id.* at 3.)  In Claim 7, he alleges that newly discovered evidence (the Quigley affidavit previously discussed) shows that a witness committed perjury at his trial.  (*Id.* at 14-15.)  He argues that the perjured testimony provides a basis for collateral relief in this § 2255 motion and that the Quigley affidavit provides a basis for a new trial.  (*Id.*)  The government does not assert any procedural bar to consideration of Claims 2 or 7, but instead argues that they fail on their merits.  (Resp. at 3, 7-8.)

## A.  Claim 2

In Claim 2, movant argues that Investigator Holmes was the moving force behind his prosecution.  (Mem. Supp. at 6.)  He argues that Holmes' unprofessional acts based upon improper motives, *i.e.*, animosity and ill-will toward the Hughes family, should be "attributed to the entire prosecution and therefore th[e] prosecution violated [his] due process rights under the Fifth Amendment of the United States Constitution."  (*Id.*) Respondent provides an affidavit from Holmes wherein Holmes avers that he never attended school with Ronald Hughes Jr., and never heard of the Hughes family or their business until a bank reported suspicious activity related to movant's business accounts. (*See* Aff. of Holmes, attached as Ex. 2 to Resp.)

The Fifth Amendment prohibits the government from selectively or vindictively prosecuting an individual.  *See United States v. Armstrong*, 517 U.S. 456, 463 (1996) (selective prosecution); *United States v. Goodwin*, 457 U.S. 368, 372 (1982) (vindictive prosecution).   Although the decision to prosecute rests within the sound discretion of the prosecutor, such decision "may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification'", *Armstrong*, 517 U.S. at 464 (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)), or to punish an individual for exercising a protected right, *Goodwin*, 457 U.S. at 372.

Movant does not allege that the government prosecuted him based upon his race or other classification or that it prosecuted him for the exercise of a protected right.  He

10

instead alleges that the government prosecuted him because of an investigator's personal animosity and ill-will toward his family.  Such allegation does not raise an actionable selective prosecution claim under *Armstrong* or an actionable vindictive prosecution claim under *Goodwin*.  The Fifth Amendment protections set forth in those Supreme Court decisions do not prohibit prosecutions based upon personal dislikes, animosity, or ill-will that are not based upon an unconstitutional motive.  Thus, even if the Court were to accept that Investigator Holmes had a personal vendetta against the Hughes family, such vendetta would not raise to the level of an unconstitutional selective or vindictive prosecution.

Furthermore, a review of the record before the Court does not show that Holmes had a personal vendetta against the Hughes family.  The possibility of such vendetta arises from statements made in 1995 by Agent Dobbs to Agent Largent of the FBI regarding a telephone conversation between Dobbs and Holmes in 1990.  (FCR at 6 & n.12.)  According to the statement given by Dobbs to Largent, Holmes "indicated that he had had a prior problem with a Hughes family member and that he would do whatever was necessary to 'get' Mr. Hughes."  (*Id.* at 6.)  Although with respect to such statement Agent "Dobbs waffled a bit during his testimony at the evidentiary hearing" conducted by the magistrate judge in January 1999, (*see id.* at 17), he specifically testified at the June 1999 evidentiary hearing before the then presiding district judge that, Holmes never told him that he had a "vendetta" against the Hughes family; never

told him that "he was going to do something wrongful in any way in [his] investigation"; and never said he "was going to get the Hugheses", (Tr. Proceedings – Vol. III, doc. 328, [hereinafter Tr. III] at 7-8).  Agent Dobbs testified that he never formed an "impression that [Holmes] was going to do anything wrongful in th[e] investigation" of Hughes.  (*Id.* at 8.)  He affirmatively testified:  "Mr. Holmes didn't tell me he went to school with anybody.  He didn't tell me he was biased.  He didn't tell me he hated anybody.  He didn't tell me he was going to get anybody at any cost.  And he didn't tell me he was going to do anything wrongful."  (*Id.* at 15.)  He testified that Holmes said "he had a problem with a member of the Hughes family."  (*Id.* at 16.)  In light of the testimony given at the June 1999 evidentiary hearing, the Court finds no support for finding that Holmes had a personal vendetta against the Hughes family.  That Holmes may have had a "problem" with someone in movant's family simply does not equate to a personal vendetta.

Furthermore, Holmes testified at the January 1999 evidentiary hearing that he did not make the statement attributable to him by Agent Dobbs.  (Tr. of Evid. H'rg at 97.)  He testified that he had no prior contact or familiarity with the Hughes family prior to the criminal investigation.  (*Id.*)  He denied telling Dobbs that he would "get the Hughes family."  (*Id.*)  Although Holmes "was the least credible witness to testify" at the January 1999 evidentiary hearing, the magistrate judge noted that "it truly did not appear that Holmes was acquainted with any Hughes family members prior to initiating his

12

investigation." (FCR at 17.) While recognizing that Holmes "engaged in some quest-
ionable pretrial antics", the magistrate judge further recognized that any problem
Holmes had "with the Hughes clan" began after he commenced his investigation. (*Id.*
at 18.) Thus, the initial investigation by Holmes certainly was not motivated by any ill-
will, animosity, or vendetta.

Movant's argument, moreover, fails to take into account the role of the United
States Attorney in his prosecution. Although the IRS investigated Hughes, the Office
of the United States Attorney charged and prosecuted him. (Tr. Proceedings – Vol. II,
doc. 327, [hereinafter Tr. II] at 29 (testimony of Assistant United States Attorney
Michael Uhl).) Movant makes no allegation that the prosecutors who actually made the
decision to prosecute him acted vindictively. He establishes no link between the alleged
ill-will and vindictiveness of the IRS agent in charge of the criminal tax investigation and
the prosecutors who initiated and litigated the charges brought in this federal criminal
action that resulted in his conviction. Without such link, movant's claim of vindictive
prosecution necessarily fails whether or not it is based on an unconstitutional motivation
on the part of the investigator. The proper focus for claims of selective or vindictive
prosecution "is on the ultimate decision-maker." *United States v. Gomez-Lopez*, 62 F.3d
304, 306 (9th Cir. 1995). In general, "it is only the biases and motivations of the
prosecutor that are relevant." *United States v. Gilbert*, 266 F.3d 1180, 1187 (9th Cir.

2001).  The Court will not attribute any alleged ill-will, animosity, or vindictiveness of the IRS investigator to the prosecution team.

For all of these reasons, Claim 2 entitles movant to no relief in this § 2255 action.

## B.  Claim 7

Claim 7 likewise fails to present a claim that entitles movant to relief in this collateral challenge to his conviction.  It fails because movant makes no allegation that the government knowingly and wilfully used perjured testimony to obtain the conviction.  *See Mitchell v. United States*, 368 U.S. 439, 441 (1962) (holding that to obtain relief under § 2255 for alleged perjury, "it is essential for the moving party to establish not only that perjury existed but also that the prosecution used the testimony knowingly and wilfully to obtain a conviction").

Nevertheless, in light of movant's argument that the Quigley affidavit provides a basis for a new trial, the Court examines whether he could succeed with the claim as a motion for new trial under Fed. R. Crim. P. 33.

## III.  REQUEST FOR NEW TRIAL

Relying on *Larrison v. United States*, 24 F.2d 82 (7th Cir. 1928) and cases relying upon that case, movant argues that he is entitled to a new trial because newly discovered evidence (at least newly discovered when movant filed his motion to vacate in 1998) shows that witness Glyn Robert Chambers provided perjured testimony.  As previously mentioned, movant provides an affidavit from an inmate who shared a prison housing

facility in September 1994 with Chambers that Chambers told him that Hughes did not

know that the loaned money was from drug proceeds, and that Chambers "was going to

'fry Hughes' and anyone else he could to get a time cut."   (*See* Aff. of Quigley at 4,

attached to Mem. Supp.)

In 1998, Fed. R. Crim. P. 33 imposed a two-year time limit from the final

judgment of the court of appeals for motions for new trial based upon newly discovered

evidence.  Because the court of appeals issued its final judgment in late 1996, a motion

for new trial would have been timely filed when movant filed the instant § 2255 motion

in February 1998.  Nevertheless, the Fifth Circuit has rejected the rule enunciated in

*Larrison.  See United States v. Wall*, 389 F.3d 457, 473 (5th Cir. 2004), *cert. denied*, 544

U.S. 978 (2005).  In the Fifth Circuit, a new trial is not justified due to alleged newly

discovered evidence unless the defendant

> prove[s] that (1) the evidence is newly discovered and was unknown to the
> defendant at the time of trial; (2) the failure to detect the evidence was not
> due to a lack of diligence by the defendant; (3) the evidence is not merely
> cumulative or impeaching; (4) the evidence is material; and (5) the
> evidence if introduced at a new trial would probably produce an acquittal.

*Id.* at 467 (relying on rule enunciated in *Berry v. State*, 10 Ga. 511 (1851)).   The

standard is "slightly more lenient" when the government "used false testimony that it

knew or should have known was false" – in such circumstances the fifth *Berry* factor is

relaxed to showing that "[a] new trial based on false testimony is justified if there is *any*

*reasonable likelihood* that the false testimony affected the judgment of the jury." *Id.* at 473.

This relaxed standard is inapplicable here because movant makes no allegation that the government used testimony that it knew or should have known was false. Under the third *Berry* factor, furthermore, the alleged new evidence is merely useful to impeach the testimony of Chambers.  Impeachment evidence, even when presented to show that a witness has committed perjury, "normally is not a basis for granting a new trial." *Id.* at 470.  Such evidence is insufficient to entitle movant to a new trial.  *See id.*; *United States  v. Holmes*, 406 F.3d 337, 359-60 (5th Cir.), *cert. denied*,  126 S. Ct. 375 (2005); *United States v. Pena*, 949 F.2d 751, 758 (5th Cir. 1991).

For all of these reasons, movant's arguments provide no basis for a new trial under Fed. R. Crim. P. 33.

## IV.  CONCLUSION

The Court **GRANTS** movant's January 20, 2005 motion that seeks a ruling on unresolved grounds for relief raised in his 1998 motion to vacate.  However, upon review of such unresolved grounds, the Court **DENIES** movant's Motion to Vacate, Set Aside, or Correct Sentence brought pursuant to 28 U.S.C. § 2255, and finds no basis for a new trial under Fed. R. Crim. P. 33.

**SO ORDERED.**

**SIGNED this 7th day of November, 2006.**

*Ed Kinkeade*
_____
**ED KINKEADE**
**UNITED STATES DISTRICT JUDGE**